**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| M.A by and through his parents MIGUEL AVILA, SR. and HERMINA AVILA, F.L. by and through his mother, JACQUETTA PEARSON, Y.R. by and through her mother CAROLINA BARRANCO, H.S. by and through his parents RICARDO SORIA and GEORGINA RIVERA, individually and on behalf of a class, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 15 C 3116 |
| v. | ) ) | Judge Joan H. Lefkow |
| FELICIA F. NORWOOD, in her official capacity as Director of the Illinois Department of Healthcare and Family Services, | ) ) ) ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Children identified as M.A., F.L, Y.R., and H.S., who have been receiving in-home shift

nursing services under Illinois's Medicaid program, have filed this putative civil rights class

action against Felicia F. Norwood, Director of the Illinois Department of Healthcare and Family

Services (HFS) alleging violations of (1) the Due Process Clause of the Fourteenth Amendment,

(2) the Early and Periodic Screening, Diagnostic and Treatment (EPSDT) provisions of Title

XIX of the Social Security Act (the Medicaid Act), 42 U.S.C. §§ 1396 *et seq.*, (3) Title II of the

Americans with Disabilities Act (the ADA), 42 U.S.C. § 12132, and (4) section 504 of the

Rehabilitation Act, 29 U.S.C. § 794(a).  On April 22, 2015, this court entered a temporary

restraining order enjoining defendant (the Director) from terminating the services pending

resolution of the merits of plaintiffs' claims. (Dkt. 16). Then on May 12, 2015, by agreement of

the parties, the court continued the temporary restraining order until further order of the court.

(Dkt. 20.) The Director has moved to dismiss claims I–V under Federal Rule of Civil Procedure

12(b)(6) and claims VI and VII under Federal Rule of Civil Procedure 12(b)(1). (Dkt. 29.) For

the reasons stated below, the Director's motion is granted in part and denied in part.[1]

## BACKGROUND[2]

Illinois has chosen to operate a Medicaid program to provide federally-funded, in-home

shift nursing services to needy children under the age of twenty-one. (*Id.* ¶ 68.) Illinois'

"Nursing and Personal Care Services Program" is administered through HFS. At issue here is

the federal requirement that Illinois must provide in-home shift nursing services to Medicaid-

eligible children when "necessary to correct or ameliorate their medical illness and conditions."

*See* 42 U.S.C. § 1396d(a).[3]

Under Illinois' eligibility standards, in-home nursing shift nursing services "will be

granted when, in the judgment of a consulting physician and subject to the review of the

professional staff of the Department, the services are medically necessary and appropriate to

meet the participant's medical needs." 89 ILL. ADM. CODE § 140.473(e). Prior to January 1,

2014, Illinois' procedure for considering an applicant's eligibility consisted of the submission of

---

[1] The court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. Venue is proper in this district under 28 U.S.C. § 1391(b).

[2] Unless otherwise noted, the following facts are taken from the amended complaint and are presumed true for the purpose of resolving the pending motion. *See Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011) (citation omitted).

[3] "Although participation in the program is voluntary, participating States must comply with certain requirements imposed by the Act and regulations promulgated by the Secretary of Health and Human Services." *Wilder* v. *Virginia Hosp. Ass'n*, 496 U.S. 498, 502, 110 S. Ct. 2510, 2513, 110 L. Ed. 2d 455 (1990); *see Townsend* v. *Swank*, 404 U.S. 282, 286, 92 S. Ct. 502, 505, 30 L. Ed. 2d 448 (1971) ("[A] state eligibility standard that excludes persons eligible for assistance under federal AFDC standards violates the [Social Security] Act and is therefore invalid under the Supremacy Clause.")

written statements from the applicant's treating physicians articulating the applicant's medical need for a certain number of weekly hours of home nursing services and a review of that written statement by an HFS employee. (Am. Compl. ¶ 77.)

Sometime between January 2014 and February 2015, however, Illinois began applying a new eligibility standard during re-authorization reviews of in-home shift nursing service for at least 178 previously approved participants. (*Id.* ¶ 52.) The new standard appears to include an assessment tool (with an associated scoring methodology), which had not been used prior to January 2014. (*Id.* ¶¶ 84–85.) Although this eligibility standard has not been published, HFS has applied it to deny, terminate, and reduce services for children with complex medical needs. (*Id.* ¶ 91.) Of those cases reviewed using the new eligibility standard, 66% of the children were determined to be no longer eligible, 32% were determined eligible for a reduced level of services, and only 2% were determined eligible for their previously approved level of services. (*Id.* ¶ 53.)

During December 2014 and January 2015, plaintiffs received a notice that the in-home shift nursing care they had been receiving was to be reduced or terminated. (*Id.* ¶¶ 31, 35, 40, 45, 121, 130, 139, 148.) The notice followed a form template stating that services had been denied, terminated, or reduced "based on individual assessment and medical documents provided." (*Id.* ¶¶ 12, 102–04.) The notice did not identify the standard being applied or state any medical basis for the determination. (*Id.* ¶¶ 102–106.)

HFS did not publish or publicly cite any rule, policy or regulation articulating its policy. (*Id.* ¶ 160.) Plaintiffs have inferred that the new standard includes an exception process but, without information as to what exceptions exist, they have been denied the opportunity to meaningfully seek exceptions. (*Id.* ¶¶ 162–65.)

Further, the notice did not provide adequate information about how to file an appeal. (*Id.* ¶ 110.) Specifically, the notice contained erroneous and misleading information regarding the appeals process and failed to inform plaintiffs of their right to continued services during the pendency of an appeal. (*Id.* ¶¶ 107, 111, 116.)

Plaintiffs' health, safety, and development are threatened with irreparable harm if their services are not reinstated. (*Id.* ¶¶ 124, 133, 142, 151.) If their in-home shift nursing services are terminated or reduced, they will have to be institutionalized to receive necessary care or, if they choose to remain living at home with reduced or no in-home nursing services, they face a strong possibility of life threatening episodes. (*Id.* ¶¶ 125, 134, 143, 152.)

## CLAIMS

Plaintiffs plead five claims:

**Claim 1:** The Director's current eligibility standard is unreasonable, unwritten, and arbitrary in violation of their rights to due process of law.

**Claim II:** The Director's written notice to the plaintiffs that their services have been terminated or reduced are inconsistent with 42 C.F.R. § 431.210(b) and violate their right to due process in that (a) they do not adequately state the agency's action or the reasons it and (b) fail to state what exceptions are available and whether an exception and an appeal can be pursued concurrently.

**Claim III:** The Director's written notice and failure to publish the eligibility standard by which their applications were measured deny plaintiffs procedural rights under the Act and of due process in that they (a) fail to adequately notify them of their right to appeal the decision and to have a "fair hearing" and (b) fail to inform the plaintiffs that their benefits could be continued pending a decision on their appeal.

**Claim IV:** The Director's termination or reduction of plaintiffs' in-home nursing services deprives them of their federal statutory rights because they are being deprived of their right to services which are necessary to correct or ameliorate their conditions, required by 42 U.S.C. §§ 1396a(a)(43), 1396d(a) and 1396d(r)(5).

**Claim V:** The Director's pattern and practice of terminating in-home nursing services to the plaintiffs without first determining their eligibility under all other Medicaid programs violates their statutory rights under 42 U.S.C. § 1396a(a)(8) and the due process clause.

**Claim VI:** The Director's termination or reduction of in-home nursing services violates plaintiffs' rights under the ADA by tending to segregate them into institutions rather than integrating them into settings appropriate to their needs and abilities, as required by 42 U.S.C. § 12132 and an implementing regulation, 28 C.F.R. § 35.130(d).

**Claim VII:** The Director's termination or reduction of in-home nursing services and elimination of funding violates plaintiff's rights under § 504 of the Rehabilitation Act by tending to segregate them into institutions rather than integrating them into settings appropriate to their needs and abilities, as required by 42 U.S.C. § 794(a) and an implementing regulation, 28 C.F.R. § 41.51(d).

Plaintiffs ask the court to enjoin the Director from applying the new eligibility standard to review applications or renewals of their in-home nursing services until (a) she publishes an ascertainable and lawful standard that is no less restrictive than the federal standard for EPSDT benefits; (b) she gives notice of termination or reduction in services that permit plaintiffs to meaningfully participate in a fair hearing; and that (c) plaintiffs' benefits be continued until their eligibility can be redetermined using a published, ascertainable, and lawful standard.

**ANALYSIS**

I.      **Failure to State a Claim**

    A.      **Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011); *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002).  To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The allegations in the complaint must be "enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The plaintiff need not plead legal theories.  *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010).  "Federal pleading rules call for 'a short and plain statement of the claim showing the pleader is entitled to relief' . . . .  [T]hey do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson* v. *City of Shelby*, 574 U.S. ---, 135 S. Ct. 346, 346, 190 L. Ed. 2d 309 (2014) (per curiam) (citation omitted).

    B.      **Claim I**

The Director's motion contends that Claim I should be dismissed because HFS's medical necessity review culminates in a decision made by a qualified physician based on the child's medical information according to the eligibility standards set forth in title 89, ILLINOIS

ADMINISTRATIVE CODE, §§140.2 (defining "necessary medical care" as "that which is generally recognized as standard medical care required because of disease, disability, infirmity or impairment"); 140.6 (listing services not covered, including non-medically necessary services provided for the convenience of recipients or their families); 140.470–140.473.[4] (Dkt. 30 at 11.) According to the Director, the rules satisfy due process.

To ensure fairness and to prevent arbitrary decision making, due process requires eligibility for government assistance programs to be determined according to articulated standards. *See Carey* v. *Quern*, 588 F.2d 230, 232 (7th Cir. 1978) (no administrative guidelines other than "as needed" governing eligibility for a clothing allowance violates due process); *White* v. *Roughton*, 530 F.2d 750, 753–54 (7th Cir. 1976) (determination of eligibility based on unwritten standards violates due process).

The rules on which the Director relies to demonstrate compliance with due process are longstanding. They were presumably used to determine the original eligibility of the plaintiffs and plaintiffs do not take issue with them here. The gravamen of plaintiffs' claim, rather, is that in 2014 HFS began applying a *new* unpublished eligibility standard that has arbitrarily resulted in deprivation of necessary medical care for the plaintiffs. The allegation that the new standard resulted in dramatic reduction of services to persons who had been previously approved under the rules lends support to plaintiffs' contention that the standards have changed in practice but not in rules or guidelines made available to plaintiffs. If the allegations are true, as the court must assume, then the Director's application of unwritten standards is inconsistent with due

---

[4] Section 140.471(b) provides that home health care services "shall be of a curative or rehabilitative nature and demonstrate progress toward goals outlined in a plan of care. Services shall be provided for individuals upon direct order of a physician and in accordance with a plan of care established by the physician and review at least every 60 days." Section 140.471(e) provides, "Approval will be granted when in the judgment of a consulting physician and subject to the review of the professional staff of the Department, the services are medically necessary and appropriate to meet the participant's medical needs."

process.  The Director's motion will be denied with respect to Claim I.

**C.      Claim II**

The Director asserts nine reasons why the written notices to plaintiffs satisfy the requirements of due process, defeating plaintiffs' second claim.  (*Id.* at 12.)  Only one of the Director's reasons addresses plaintiffs' allegation that the notices fail to inform them of the reasons for elimination or reduction in assistance:  "[T]he Notice plainly states that HFS' decision to deny prior approval was based on an individual assessment and medical documentation provided."  (*Id.*)

As explained in *Featherston* v. *Stanton*, 626 F.2d 591, 593 (7th Cir. 1980), federal regulations governing fair hearings for Social Security recipients incorporate the principles set out in *Goldberg* v. *Kelly*, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970) *and* "prescribe greater procedural safeguards than are mandated by the Constitution."  *See* 42 C.F.R § 431.205(d) ("The hearing system under the Act "must meet the due process standards set forth in *Goldberg* v. *Kelly* and any additional standards specified in [these regulations].") (citation omitted).  As such, due process principles inform the interpretation of the regulations.

Under 42 C.F.R. § 431.210(b), a notice of an action affecting a Medicaid recipient's benefits must contain the following information:

> (a) A statement of what action the State . . . intends to take;
>
> (b) The reasons for the intended action;
>
> (c) The specific regulations that support, or the change in Federal or State law that requires, the action;
>
> (d) An explanation of—
>
> (1) The individual's right to request an evidentiary hearing if one is available, or a State agency hearing; or
>
> (2) In cases of an action based on a change in law, the circumstances under which a hearing will be granted; and

> (e) An explanation of the circumstances under which Medicaid is
> continued if a hearing is requested.

*See Tripp* v. *Coler*, 640 F. Supp. 848, 857 (N.D. Ill. 1986); *see also* 42 C.F.R. § 431.210.[5]

### 1.    Failure to Adequately Inform Plaintiffs of the Reasons for Termination or Reductions

Since the landmark ruling in *Goldberg*, courts of appeals have been consistent in

requiring notices of changes in welfare benefits to be clear and specific.  As *Goldberg*

pronounced, due process requires that the agency's reason for its action be stated in sufficient

detail to allow the affected individual "an effective opportunity to defend by confronting any

adverse witnesses and by presenting his own arguments and evidence orally."  *Id.* at 267–68; *see*

*Featherston*, 626 F.2d 591; *Vargas* v. *Trainor,* 508 F.2d 485 (7th Cir. 1974); *Tripp*, 640 F. Supp.

at 857.  "These rights are important . . .  where recipients have challenged proposed terminations

as resting on incorrect or misleading factual premises or on misapplication of rules or policies to

the facts of particular cases."  *Goldberg*, 397 U.S. at 268.  Without effective notice, a claimant's

due process right to a fair hearing is rendered fundamentally illusory.  *Kapps* v. *Wing*, 404 F.3d

105, 124 (2d Cir. 2005) (citing *Escalera* v. *New York City Hous. Auth.,* 425 F.2d 853, 862 (2d

Cir.1970) (noting that a hearing would be of little value if the defendant could deny the claimants

benefits based on reasons of which the claimants had no knowledge).  Stating only the "ultimate

reason" is insufficient notice.  *See Dilda* v. *Quern*, 612 F.2d 1055, 1057 (7th Cir. 1980) (per

curiam); *Tripp*, 640 F. Supp. at 857–58.  Thus, an agency must provide specific reasons for how

the decision was reached.  *Gray Panthers* v. *Schweiker*, 652 F.2d 146, 169 (D.C. Cir. 1981); *see*

*Barnes* v. *Healy*, 980 F.2d 572, 579–80 (9th Cir.1992); *Tripp*, 640 F. Supp. at 857–58.

---

[5] An "action" is defined as a "termination, suspension, or reduction of Medicaid eligibility or covered services."  *K.W. ex rel. D.W.* v. *Armstrong*, 789 F.3d 962, 970 (9th Cir. 2015) (citing 42 C.F.R. § 431.201).

Defendant's notice states the ultimate reason:  that the plaintiff no longer qualifies for the services. That the decision is "[b]ased on the individual assessment and the medical documents provided" does little to elucidate.  Certainly, the information is insufficient to allow a claimant to prepare an effective appeal.  Thus, the court finds that the facts, as plaintiffs have alleged them, state a claim for violation of 42 C.F.R. § 431.210(b).

### 2. Failure to Identify Regulations Supporting Reduction or Termination of Benefits

Subsection (c) requires that notice contain "[t]he specific regulations that support, or the change in Federal or State law that requires, the action."  Plaintiffs argue that, because the Director has not published or publicly cited any rule, policy, or regulation supporting her actions, has disclosed limited information about HFS's new eligibility standard, and given no information about the apparent availability of exceptions for which they might qualify, she has failed to comply with subsection (c).  (*Id.* ¶¶ 162–65.)  For the same reasons as set out in Part I, B, these allegations are sufficient to state a claim under 42 C.F.R. § 431.210(c).  Because requirements of due process are incorporated into the regulation which has been violated, violation of the statute and regulations implies violation of due process, although the court need not address the constitutional question.  *See Featherston*, 626 F.2d at 592–93.

### D. Claim III

Plaintiffs allege that they were deprived of their right to a fair hearing under the Due Process Clause and the Medicaid Act.  (*Id.* ¶¶ 173–79.)  Specifically, plaintiffs allege that the Director's deficient notices failed to adequately notify them of (1) the reasons for the termination or reduction in services, (2) the procedures for requesting a hearing, and (3) their right to continued benefits pending the outcome of such an administrative hearing.

### 1. Failure to Adequately Inform Plaintiffs of the Reasons for Termination or Reductions

Plaintiffs do not dispute that an administrative hearing is available to them. Rather, they argue that they were unable to prepare their arguments, gather evidence, and present meaningful cases during their appeals because the Director failed to adequately inform them of the standards used to determine eligibility and the reasons for termination or reduction of their benefits. (*Id.* ¶ 178.) This claim is duplicative of Claim II and is stricken to the extent it challenges the adequacy of notice.

### 2. Failure to Adequately Inform Plaintiffs of Their Hearing Rights

Plaintiffs also claim that this notice does not comply with Medicaid regulations governing administrative appeals, which require "[t]he agency . . . inform every applicant or beneficiary in writing (1) of his right to a hearing; (2) of the method by which he may obtain a hearing; and (3) that he may represent himself or use legal counsel, a relative, a friend, or other spokesman." 42 C.F.R. § 431.206(b).[6] The Director argues that her notice complies with this regulation.

Plaintiffs' notice of termination of benefits included the following notice:

> If you disagree with this decision, you may, at any time, within 60 days following the "DATE OF NOTICE", appeal this decision and receive a fair hearing. Such an appeal must be filed with the Department in writing or by calling (toll-free) [number given]. You may represent yourself at this hearing or you may be represented by someone else, such as a lawyer, relative, or friend.

(Dkt. 30, Exh. D.) The notice appears to comply with the regulation, but plaintiffs allege that "[t]he notice failed to provide instructions regarding *how* to appeal in writing and that the

---

[6] In pertinent part, § 431.206(c) states that "the agency must provide the information required in paragraph (b) of this section . . . (2) at the time of any action affecting his or her claim." 42 C.F.R. § 431.206(c). "Action means a termination, suspension, or reduction of Medicaid eligibility or covered services." 42 C.F.R. § 431.201.

mailing address was not included on the notice."[7]  (Am. Compl. ¶ 111.)  Plaintiffs further allege,

> A call to the toll free number placed the caller in a phone tree with a choice of prompts to choose from, none of which was identical to any language contained in the notice.  The automated messaged stated that fax and mail were the Defendant's preferred methods for receipt of an appeal request.  Notably, the mailing address provided through the automated phone tree differs from the mailing address listed on the Defendant's letterhead, and no fax number was listed on the notice.

(*Id.* ¶ 112.)  This allegation indicates that the written notice is inconsistent with actual practice. The allegation that some of the putative class members who attempted to appeal were unsuccessful in doing so reinforces that allegation.  (Dkt. 41 at 8.)  Without question, information that is incorrect, incomplete or misleading would be inconsistent with the statute and regulations.  Accordingly, plaintiffs have stated a claim under Medicaid regulation 42 C.F.R. § 431.206(b).

### 3.  Failure to Adequately Inform Plaintiffs of their Rights to Continued Benefits Pending the Outcome of a Fair Hearing

Plaintiffs also maintain that the Director violated 42 C.F.R. § 431.231 because the written notice lacks any information about plaintiffs' right to continue in-home nursing services during the pendency of a timely appeal.  (Am. Compl. ¶ 175.)

42 C.F.R. § 431.231, which addresses when the agency must reinstate and continue services, does not address to what extent, if any, the agency is required to notify applicants or beneficiaries of their right to continued benefits pending the outcome of a hearing.  Section 431.210(e), however, states that when the agency takes action affecting the individual's claim the notice must contain "[a]n explanation of the circumstances under which Medicaid is continued if a hearing is requested."  42 C.F.R. § 431.210(e).

---

[7] HFS's letterhead on the notice gives an address, but the notice does not give specific information as to where within HFS to direct a written appeal.

Plaintiffs allege that the written notice made no mention of plaintiffs' right (if any) to continued services during the pendency of an appeal, failed to provide an explanation about the circumstances under which in-home shift nursing services would continue if they requested a hearing, and failed to explain how they could exercise this right in the context of the stated gradual reduction in services, or during the titration period. (*Id.* ¶¶ 107–09.) These facts, as plaintiffs have alleged them, state a claim under Medicaid regulation 42 C.F.R. § 431.210(e).

## E.      Claim IV

Plaintiffs characterize Claim IV as a claim that the Director's eligibility standard for in-home care nursing services to plaintiffs is more restrictive than the Medicaid Act permits, citing 42 U.S.C. § 1396a(a)(17) (requiring a State's plan for medical assistance to include reasonable standards for determining eligibility for and the extent of medical assistance which are consistent with the objectives of the Act.) They contend that the Director has reduced or terminated services to plaintiffs that are necessary to correct or ameliorate their conditions, in violation of 42 U.S.C. §§ 1396a(a)(43) (requiring implementation of EPSDT services) and 1396d(r) (defining scope of EPSDT services).

The Director argues that HFS's eligibility standards comply with the cited regulations. She reasons that the Medicaid Act allows states "to define 'medical necessity' in a way tailored to the requirements of its own Medicaid program." (Dkt. 30 at 8 (quoting *Rush* v. *Parham*, 625 F.2d 1150, 1155 (5th Cir. 1980)). Illinois has done so, defining "necessary medical services" as that care "which is generally recognized as standard medical care required because of disease, disability, infirmity or impairment," 89 ILL. ADM. CODE § 140.2(a), (b); in addition, HFS applies administrative rules that govern approval of providers of in-home nursing services. *See* ILL. DEPT. HEALTHCARE AND FAMILY SERV. HANDBOOK FOR HOME HEALTH CARE

SERVICES (Feb. 2015), http://www2.illinois.gov/hfs/SiteCollectionDocuments/r200.pdf.   The

Director asserts that HFS has an articulated standard:  in-home shift nursing services for children

are granted "when, in the judgment of a consulting physician and subject to the review of the

professional staff of [HFS], the services are medically necessary and appropriate to meet the

participant's medical needs."  (Dkt. 30 at 9 (citing 89 ILL. ADM. CODE § 140.473(d)–(e)).)

Because HFS's consulting physician reviewed each individual plaintiff's in-home shift nursing

services according to whether the requested hours were medically necessary, the Director argues,

HFS is in compliance with §§ 1396a(a)(43) and 1396d(r).  (Dkt. 30 at 10.)

As the Director points out, states have broad discretion to adopt standards for determining

the extent of medical assistance so long as the standards are "'reasonable' and 'consistent with

the objectives' of the Act."[8] *Rush*, 625 F.2d at 1155 (citing *Beal* v. *Doe*, 432 U.S. 438, 444,

97 S. Ct. 2366, 2371, 53 L. Ed. 2d 464 (1977)).  Section 1396d(r) broadly requires a participating

state to provide four specific categories of services to Medicaid-eligible children:  screening,

vision, dental and hearing services, 42 U.S.C. § 1396d(r)(1)–(4), and "such other necessary

healthcare, diagnostic services, treatment, and other measures . . . to correct or ameliorate defects

and physical and mental illnesses and conditions discovered by the screening services, whether

or not such services are covered under the State plan."  *Id.* § 1396d(r)(5).  Within those

categories, Congress has set out the types of medical services and treatment to be provided to

---

[8] The Act sets out the purpose of grants to states for medical assistance programs as follows:

> [. . . to enable] each State, as far as practicable under the conditions in
> such State, to furnish (1) medical assistance on behalf of families with
> dependent children and of aged, blind, or disabled individuals, whose
> income and resources are insufficient to meet the costs of necessary
> medical services, and (2) rehabilitation and other services to help such
> families and individuals attain or retain capability for independence or
> self-care[.]

42 U.S.C. § 1396-1.

Medicaid-eligible individuals, including children.  *See id.* § 1396d(a)(1)–(29).  Participating

states, however, are still only required to provide such services or treatments as are "medically

necessary."  *Moore ex. rel. Moore* v. *Reese*, 637 F.3d 1220, 1233–34 (11th Cir. 2011).   In short,

the statute defines the range of services that must be provided, if the services are medically

necessary according to State-created reasonable standards that are consistent with the objectives

of the Act.

The Medicaid Act does not explicitly define "medical necessity."  *Id.* at 1232.  But a

state's provision of a required EPSDT service "must be sufficient in amount, duration, and scope

to reasonably achieve its purpose."  42 C.F.R. § 440.230(b).  In determining medical necessity

the treating physician assumes "the primary responsibility of determining what treatment should

be made available to his patients," and "a state Medicaid agency can review the medical

necessity treatment prescribed by a doctor on a case-by-case basis.  *Rush*, 625 F.2d at 1155–56.

Thus, both the treating physician and the state have roles to play.  *Moore*, 637 F.3d at 1233–34

(citing *Moore v. Medows,* 324 Fed. App'x 773, 774 (11th Cir. 2009)).

At the pleading stage, the question is only whether plaintiffs have alleged sufficient facts

that would permit the inference that in-home nursing care is medically necessary for the named

plaintiffs where their treating physicians have determined that it is.  Plaintiffs have alleged that

M.A. is eight years old and has been receiving in-home shift nursing services for the past six

years to treat his Cornelia DeLange syndrome, cleft palate repair, and sleep apnea.  (Am. Compl.

¶¶ 31–32).  They continue,

> He has respiratory issues associated with [these] diagnoses. He requires Nebulizer
> breathing treatments every 4 hours and when he gets a cold or has difficulties with
> being congested. M.A. has snoring/sleep apnea episodes at night where he actually
> wakes himself up and has episodes of not breathing. His neurological development is
> severely delayed and he has ongoing twitching, seizure-like activity in his brain, so
> his safety requires that he has someone there with him at all times. M.A. has a
> Gastrostomy Button ("GB"), which was surgically placed into his abdomen. The

nurses use this "feeding tube" to give him the formula he requires to survive. This is his only means of nutrition. M.A. has a very weak swallow reflex, which increases the chances of the liquid going into his lungs. M.A. often pulls his GB out, and sticks his finger in the GB stoma. If the GB does come out, the nurse has to replace it immediately, as the stoma will begin to close up within the hour. M.A. will have to go to the hospital to have the GB surgically replaced if it does not get replaced quickly enough at home.

M.A. is totally dependent on [*sic*] all activities of daily living. He is developmentally disabled. He cannot communicate any of his needs. He is non-ambulatory and is wheelchair dependent. He is incontinent of bowel and bladder. He does not walk or sit up on his own, so he needs to be monitored closely for skin breakdown. M.A. is hearing impaired and visually impaired.

*Id.* ¶¶ 31–33. M.A.'s treating physician has stated that sixty hours per week of in-home shift nursing care is medically necessary for M.A. *Id.* ¶ 31. Defendant, however, has terminated M.A.'s in-home shift nursing care based on an unpublished standard which appears to rest on the judgment of a HFS consulting physician. The Amended Complaint alleges similarly serious impairments concerning the other named plaintiffs. Plaintiffs allege that, for their medically complex conditions, denial or reduction of services, contrary to their treating providers' recommendations, creates dire risks, including unnecessary medical complications and sudden death. *Id.* ¶¶ 21–22.

The allegations reflect that the plaintiffs are seriously ill or disabled children, that they have been terminated from benefits which they have previously been determined eligible for and have been receiving—some for lengthy periods of time; and that HFS has failed to articulate the standard being applied in making the adverse determinations. Of course, the Director may be able to rebut plaintiff's evidence with evidence that the services are not medically necessary (perhaps the care can be safely provided by non-medical caregivers) but plaintiffs' have alleged sufficient facts to plausibly permit the inference that HFS has terminated or reduced benefits contrary to § 1396d. *See Moore*, 637 F.3d at 1259[9] ("When a state Medicaid agency has

---

[9] In *Moore*, the court of appeals concluded that determination of medical necessity (what amount of private duty nursing hours are medically necessary) was a task for the factfinder at trial. *See* 324 F.3d

exceeded the bounds of its authority by adopting an unreasonable definition of medical necessity or by failing to ensure that a required service is 'sufficient in amount, duration, and scope to reasonably achieve its purpose,' aggrieved Medicaid recipients have recourse in the courts."); *see also* 42 C.F.R. §§ 440.230(c), (d).

### F.     Claim V

Plaintiffs allege that the Director's practice of terminating in-home nursing services without first determining eligibility for other Medicaid program services violates 42 U.S.C. § 1396a(a)(8) and the Due Process Clause.  (Am. Compl. ¶ 192–95.)  Urging dismissal, the Director first argues that "the statute neither creates any right to receive services determined to be non-medically necessary nor imposes any duty on the Medicaid agency to continue non-medically necessary services while applications to other programs are pending."  (Dkt. 30 at 12.) The Director further argues that "HFS'[s] denial of prior approval for a particular service, based upon review of medical necessity, in no way impacts the child's Medicaid eligibility and does not trigger any legally cognizable requirement to submit an application to some other medical assistance program."  (*Id.* at 12–13.)

Section 1396a(a)(8) provides that the state Medicaid plan shall "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."  42 U.S.C. § 1396a(a)(8).  The Director is correct that this section does not explicitly impose a duty on the agency to grant or continue non-medically necessary services

---

at 1258.  Similarly, in *Rush*, the court reversed summary judgment and remanded for the district court to determine whether the state had a policy prohibiting payment for experimental services and whether the requested procedure was experimental.  625 F.2d at 1156–57.  Here, the determination of medical necessity appears, in the first instance, to be the responsibility of the Director through fair hearings at HFS.

while application to other programs is pending.

Plaintiffs, however, insist that the Director was required to determine whether plaintiffs would be eligible for services from HFS's Division of Rehabilitation Services. They rely on three cases involving claims under § 1396a(a)(8). *See Crippen* v. *Kheder*, 741 F.2d 102, 106–07 (6th Cir. 1984) (holding that plaintiffs who had been terminated from Medicaid because they were no longer eligible for Supplemental Security Income were entitled to continued benefits until the state agency determined continued eligibility for Medicaid); *Mass. Assn. of Older Ams.* v. *Sharp*, 700 F.2d 749, 753 (1st Cir. 1983) (holding that plaintiffs who had been terminated from Medicaid because they were no longer eligible for AFDC were entitled to a preliminary injunction against terminating Medicaid until their eligibility was redetermined); *Dozier* v. *Haveman*, No. 2:14 CV 12455, 2014 WL 5480815, at \*5 (E.D. Mich. Oct. 29, 2014) (holding that plaintiffs were likely to succeed on the merits of their claim that Michigan official, before terminating plaintiffs from one Medicaid program, was required to conduct *ex parte* redetermination of their eligibility under other Medicaid programs).

The facts before this court are fairly analogous to those in *Dozier*. There, the plaintiffs were informed they were no longer eligible for the Medicaid program in which they were enrolled but their eligibility for other Medicaid services had not been determined. The court required the state to make that determination before terminating benefits. Here, the Director has determined plaintiffs are no longer eligible for in-home nursing services. They may well be eligible for other services under Medicaid, see, e.g., 42 U.S.C.§ 1396d(a)(24), but plaintiffs have not pleaded any facts indicating that Illinois' Medicaid program comprehends such services or why the Director is responsible to determine their eligibility. Without specific facts supporting a sound legal theory, Claim V fails to state a claim upon which relief may be granted.

Accordingly, the court will dismiss Claim V without prejudice.

## II.    Lack of Subject-Matter Jurisdiction Over Claims VI and VII

Claims VI and VII of plaintiffs' amended complaint seek a declaratory judgment broadly "requiring defendant to adhere to the requirements of the ADA and the Rehabilitation Act." (*See* Am. Compl. at 41 ¶ 2.a.)  These Acts require recipients of federal funds to "administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons."  28 C.F.R. § 41.51(d).[10]  Plaintiffs argue that the elimination or reduction of their in-home shift nursing services will violate the integration mandate by forcing plaintiffs to "either be institutionalized in a hospital or a skilled nursing facility to receive the necessary services" or, if they remain at home with reduced services, they face a strong possibility of a life threatening episode.  (Am. Compl. ¶¶ 124–25, 133–34, 142–43, 151–52.)  The Director argues that, since plaintiffs have not alleged that any plaintiff has been institutionalized as a result of the reduction or termination of in-home shift nursing services, this issue is not ripe for adjudication.  (Dkt. 30 at 4–6.)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant can assert a "lack of subject-matter jurisdiction" defense to a plaintiff's claims.  Fed. R. Civ. P. 12(b)(1).  These defenses can be facial (that the plaintiff's allegations, even if true, fail to support jurisdiction) or factual (conceding that the allegations are sufficient but offering contrary evidence).  *Apex Digital Inc.* v. *Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).  The Director does not identify whether her challenge is facial or factual but, because her arguments address plaintiffs' allegations without offering contrary evidence, the court treats the challenge as facial.  Thus, it will "not look beyond the allegations in the complaint, which are taken as true for purposes of

---

[10] *See also* 29 U.S.C. § 794(a), 42 U.S.C. § 12132, and 28 C.F.R. § 35.130(d).

the motion." *Id.* at 444; *see also Wolfram* v. *Wolfram*, No. 14 C 04105, 2015 WL 231808, at *2 (N.D. Ill. Jan. 16, 2015).

### A.     Ripeness of the Claims

"Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality Ass'n* v. *Dept. of the Interior*, 538 U.S. 803, 807–808 (2003) (internal quotation marks and citations omitted). Ripeness concerns "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Id.* at 808.[11]

The Director relies on *Amundson* v. *Wisconsin Dep't of Health Serv.*, 721 F.3d 871 (7th Cir. 2013). In *Amundson*, developmentally disabled plaintiffs brought an action against the Wisconsin Department of Health Services alleging that the reduction in subsidies or group home care for adults with developmental disabilities violated the ADA and Rehabilitation Acts because the reduction increased the risk that they would be moved from those group homes to institutions. *Amundson*, 721 F.3d at 872–74. The court ruled that, since no plaintiff had been institutionalized or had alleged that any developmentally disabled person had been involuntarily moved to an institutional setting, the claim was not ripe for judicial resolution. *Id.* at 873–74.

---

[11] Similarly, the Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations of any interested party seeking such declaration" where there is "a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). "The test for whether an action for declaratory relief presents an actual controversy for resolution turns on whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Alcan Aluminium Ltd.* v. *Dep't of Revenue of State of Or.*, 724 F.2d 1294, 1298 (7th Cir. 1984) (quoting *Md. Cas. Co.* v. *Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)).

The court explained that the Department believed that the changes would reduce the cost of care without risking the institutionalization of any developmentally disabled person and, as such, "Wisconsin had fulfilled its obligation under federal law." *Id.* at 874; *see Maertz* v. *Minott*, No. 13 CV 00957, 2015 WL 3613712, at *13 (S.D. Ind. June 9, 2015) (holding that under *Amundson* developmentally disabled individuals' integration-mandate claims are unripe where they are merely threatened with institutionalization due to a reduced level of services).[12]

According to the amended complaint, the threat of their institutionalization is real. Unlike the situation in *Amundson*, here the Director has made no representation indicating that, without the agreement between the parties in this case to maintain the *status quo* pending litigation, plaintiffs (and putative class members) would not face imminent institutionalization. Neither has the Director determined plaintiffs' eligibility for other available services that, if provided, might prevent institutionalization. As such, the case is distinguishable from *Amundson.* Plaintiffs' claims are not "abstract disagreements over administrative policies," at least to the extent that plaintiffs claim that failure to determine their eligibility for additional/alternative services before terminating in-home nursing services violates the integration mandate. *See Pashby* v. *Delia*, 709 F.3d 307, 321 (4th Cir. 2013) ("Although the ADA does not require a public entity to provide to individuals with disabilities ... services of a

_____

[12] District Judge Magnus-Stenson carefully addressed *Amundson*, along with *Radaszewski* v *Maram*, 383 F.3d 599 (7th Cir. 2004), in *Maertz* and concluded that a policy change that resulted in reduced services but did not necessitate a change in setting or provide services in one setting that are not offered in a more integrated setting, were not ripe for adjudication under the ADA's integration mandate. Acknowledging that cases in other circuits such as *Pashby* v. *Delia*, 709 F.3d 307, 322 (4th Cir. 2013), have allowed plaintiffs to proceed on an integration-mandate claim if they were at risk of institutionalization, she concluded that *Amundson* would not permit her to let the *Maertz* plaintiffs proceed. *Beckem* v. *Minott*, No. 14 CV 00668, 2015 WL 3613714, at*12 (S.D. Ind. June 9, 2015) raised identical issues. *See Maertz*, No. 13 CV 00957, 2015 WL 3613712, at *7 n.4 (S.D. Ind. June 9, 2015). *Maertz* is on appeal (case no. 15-2377 (7th Cir., filed July 1, 2015). This court does not read *Amundsan* so narrowly.

personal nature including assistance in eating, toileting, or dressing, a state that decides to provide these services must do so in the most integrated setting appropriate to the needs of qualified individuals with disabilities.") (internal quotation marks and citations omitted).

For these reasons, the court concludes that Claims V and VI are justiciable.

## CONCLUSION AND ORDER

Defendant's motion to dismiss (dkt. 29) is granted as to Claim V with leave given to plaintiffs to replead on or before October 7, 2015. The motion is otherwise denied. Defendant shall answer the amended complaint by October 28, 2015. Should an amended complaint be filed it shall pertain only to Claim V, and defendant's pleading shall respond to the amended Claim V.

Date:   September 23, 2015

_____
U.S. District Judge